The judgment of the court was pronounced by
Slidell, J.
The plaintiff, Elizabeth Sellers, now the wife of Thomas JR. Hoover, alleges that she is the grand-daughter of John Sellers, who died in the parish of Ouachita, in 1828; and as such, is one of his heirs. That the entire succession amounted to $4766 12¿, That Matthew B. Sellers was appointed administrator of the succession, and took it into his possession. That the share to which she is entitled is one fifth of the above named sum, to wit, $953 22h, with interest on the sum of $76 60 from December 12th, 1830, at ten per cent; a like interest on the sum of $200 from the 1st January, 1832; on the sum of $332 20, from 1st January, 1833; and on the sum of $332 30 from the 1st January, 1834 ; until paid. That the defendant, as administrator, has received and still retains the several sums of money above set forth; and by reason thereof is justly indebted to her in their amount, with interest.
*181 Por a proper consideration of the plaintiff’s claim, it is necessary to state with some minuteness the proceedings which have taken place with regard to the succession of John Sellers, and the affairs of the plaintiff, who was a minor at the time of her ancestor’s death. And in making this examination it is proper to keep in view the grounds of the plaintiff’s action, to wit, that the defendant has received and retains the amounts specified.
The defendant was the brother of John Sellers, and applied for the administration of His estate. He was appointed administrator in 1828. The inventory exhibits as the sole property of the succession, a few movables, four slaves, and a tract of land in the parish of Ouachita. It is not pretended that there was any other property. The only property sold through the instrumentality of the defendant, was the movables. This sale was made in 1829, at twelve months’ credit, for a sum of $383. In the same year' the defendant suggested, in a written communication to the parish judge, his inability by reason of ill health to continue the administration, and that proceedings were in progress to place the affairs of the minors in the charge of tutors. A family meeting was held in the same year, at which W. Cr. Osburn, a son-in-law of the deceased, was nominated as tutor of Elizabeth, the present plaintiff, and other persons as tutors for the other minor heirs. On the 9th may, 1829, a decreee was made by the parish judge, homologating the proceedings of the family meeting, appointing Osburn tutor of the plaintiff, and directing that letters issue upon his giving bond and security, and taking the oath of office. In 1830, Sellers rendered an account of his administration; in which he purports to return the slaves and lands belonging to the succession, and also the notes received from the sale of the movables. He charges no commission. This account was subsequently homologated. That the notes were received by the parish judge is shown; for not long afterwards they were delivered, upon a written receipt, to Childers, a tutor of one of the minors. It is obvious, that after this period Osburn, the tutor of Elizabeth, considered Sellers as no longer charged with the the administration ; for we find him in 1830, on behalf of his wife, an Jieir of the deceased, and also describing himself as tutor of Elizabeth, suggesting, by petition to the court of probates, the necessity of a sale of the remaining property to effect a partition: and praying that a family meeting be convened to determine the terms of sale. Upon this petition the judge ordered afamily meeting, and appointed a curator ad hoc, to represent Elizabeth in the suit for partition." The family meeting recommended a sale of the lands, at a credit of two and three years from the 1st of January, 1831; and of the. slaves, at a credit of one year from the same date. In December, 1830, a decree was made, homologating the deliberations of the family meeting, and ordering the sale. On the 1st February, 1831, the sale was made under this order. The land was sold at the price of $3,383 12i, on a credit of two and three years; and the slaves at the price of $1000, at a credit of one year. And here it is proper to note, that the plaintiff’s claim is predicated upon the sales thus made ot the entire property left by the deceased, the sum claimed in her petition being the one fifth of the total product of the public sale of the movables, lands, and slaves; and the respective dates of the maturity of the purchase money being the dates from which she claims interest, as we have already stated. There is nothing to show that any of the notes of the purchasers ever came into the hands of the defendant. It appears affirmatively, that a portion of them was handed to a tutor of one of the minors.
In 1835, Henry Newman presented a petition to the parish judge, representing that Osburn, the tutor of Elizabeth, had died, and praying to be appointed *182 tutor in his stead. After publication, he was appointed ; took the oath of office ; gave bond, and received letters in 1835. In 1836, a decree was made by the parish judge, discharging Newman at his request, and appointing James Phelan tutor of Elizabeth. He gave bond as such. In 1842, he presented an account as tutor, to the court of probates; in which he debits himself with $1440, as the amount of the minor’s estate, and charges her with her board, tuition, and other expenses. In the same year, a decree was made homologating this account. In 1846, Phelan again rendered an account; in which, as before, he charges himself with $1440, as an amount received in June, 1836, (the date of his appointment,) “it being her interest in the succession of her grand-father, John Sellers." After publication, there was a decree homologating this account, and discharging Phelan from the tutorship, upon his paying the sum of $148 34, the balance in favor of the minor, exhibited by his account, after charging her for boarding, tuition, clothing, &c., during a period of ten years.
It further appears from the evidence, that the plaintiff’s mother died soon after the death of her grand-father, John Sellers. Osburn and his wife took charge of the plaintiff, until Osburn’s death. She subsequently remained under the care of Mr. and Mrs. Phelan, from whom she received a parental treatment. The boarding, clothing, &c., were worth from one hundred to one hundred and fifty dollars a years.
It also appears that the business of the Court of Probates of Ouachita, then a very extensive parish, was conducted with an irregularity, which was in some degree attributable to the extreme difficulty of communication, owing to periodical inundation ; that the records have fallen into a state of confusion, and many papers had been lost.
The case was tried by a jury, who found a verdict in favor of the defendants. The district judge refused to grant a new trial, and the plaintiff has appealed.
It is obvious, under the evidence, that the defendant has not actually in his possession any monies of the plaintiff; and that in point of fact, her estate has gone into the hands of her tutors. It is also a well settled doctrine, that a succession inherited by minors may be administered by their tutors; and as a tutor might originally administer a succession inherited by his ward, he might, so far as his war'd is concerned, relieve an administrator, if one had been appointed, from the further administration of the estate. But the plaintiff seeks to escape from the effect of these principles by questioning the legal capacity of her several tutors to act as such. Osburn, it is said, was not her tutor; because, although he was appointed, it does not appeal' that he had given bond, or taken the oath of office. That he acted as tutor, is proved. That he was recognised as such by the parish judge in subsequent proceedings, is also inferrable. Moreover, we find charges made in 1831 by the parish judge, “for taking bonds.” and by the notary, for “ writing bonds for tutors.” Under the circumstances, the defendant is fairly entitled to the benefit of the presumption, omnia rite acta. This presumption is peculiarly equitable in the present case, considering the state of confusion and dilapidation into which the records of the probate court have fallen. See Gibson v. Foster, 2d Ann. 509.
But again: the position of the plaintiff, that Osburn was not her tutor, is inconsistent with the basis upon which she rests the main portion of her claims. She demands the proceeds of sale of the land and slaves. But that sale was provoked by Osburn as her tutor. By claiming the proceeds of the sale, she affirms the sale; and by affirming the sale, she affirms his action as tutor.
As to Newman and Phelan, who subsequently were appointed her tutors and acted as such, it is said their appointments are void, because they were not pre *183 ceded by the advice of a family meeting. That the action of the parish judge was irregular, may be conceded. But, that these appointments, made by solemn decrees of a court of competent jurisdiction, can be attacked collaterally to the detriment of third persons and are absolutely void, is a proposition to which we cannot assent. See Lalanne’s Heirs v. Moreau, 13 L. R. 432; and Gibson v. Foster, 2d Ann. 509.
Judgment affirmed, with costs.